**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:25-CV-25126-PCH**

SABRESHA CLARK, as the Personal Representative of the Estate of TONY MIGUEL HOWARD,

Plaintiff,

v.

CITY OF MIAMI, a municipality of the state of Florida, DETECTIVE BRIAN NARCISSE, and DETECTIVE FLOYD PINCKNEY,

Defendants,

____________________________________/

**ORDER ON DEFENDANTS' JOINT MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

THIS CAUSE comes before the Court on Defendants City of Miami (the "City"), Detective Brian Narcisse ("Narcisse"), and Detective Floyd Pinckney's ("Pinckney") Joint Motion to Dismiss the Second Amended Complaint [ECF No. 19] (the "Motion"). Plaintiff Sabresha Clark, as Personal Representative of the Estate of Tony Miguel Howard, filed a Response in Opposition to the Motion [ECF No. 25] (the "Opposition"), and Defendants filed a Reply in Support of their Motion [ECF No. 28] (the "Reply"). The Court has carefully considered the Motion, the Opposition, the Reply, and the record. For the following reasons, the Motion is **GRANTED in part and DENIED in part.**

# BACKGROUND

## I. Factual Background

### A. The January 2020 Arrest

On January 21, 2020, Decedent Tony Howard ("Howard") was with a group of friends in front of his grandparents' house in the City of Miami. Second Amended Complaint [ECF No. 16] ("SAC") ¶ 13. As Howard left the group and walked to the carport of his grandparents' house, several detectives from the City of Miami Police Department Gang Intelligence Unit, including Narcisse and Pinckney, drove up and jumped out of police cars. SAC ¶ 14. Narcisse and Pinckney stopped and detained Howard in the carport area. SAC ¶ 15. Narcisse and Pinckney arrested Howard, handcuffed him, and took him into custody. SAC ¶ 16. The officers searched the carport and seized a firearm and ammunition. *See* SAC ¶¶ 28, 39–41. After being booked, Howard was released after spending at least one day in jail. SAC ¶¶ 24–25.

### B. The State Prosecution

Narcisse and Pinckney then agreed with one another to justify the arrest by having another officer insert false information into the arrest form. SAC ¶ 17. Narcisse and Pinckney had a colleague sign an affidavit falsely claiming that he had observed Howard leave his group of friends only after Howard noticed the police's presence and that Howard was glancing at the police over his right shoulder as he walked away toward a table. SAC ¶¶ 18–22. Additionally, the arrest affidavit falsely described Howard as wearing a hoodie jacket while he was "supporting the right side of his waistband," when in fact, Howard was wearing a large varsity jacket. SAC ¶ 21. The affiant claimed that he immediately recognized the outline of a firearm, that he called out to Howard, and that he saw Howard removing a firearm from his

waistband and attempting to conceal it within a bag. SAC ¶¶ 22–23. The arrest form charged Howard with one count of carrying a concealed firearm, possession of a firearm by a convicted felon,[1] fifteen counts of possession of ammunition by a convicted felon, and one count of attempting to tamper with physical evidence. SAC ¶¶ 19; 26.

On February 20, 2020, Miami-Dade County State Attorney's Office "no actioned" all of the felony counts involving possession of the ammunition and the single charge of attempting to tamper with physical evidence, leaving only two felony charges: one for carrying a concealed firearm and the other for possession of a firearm by a convicted felon. SAC ¶ 26. The information charging those two counts was filed in Miami-Dade County Circuit Court in the case styled *State of Florida v. Tony Miguel Howard*, No. F20-001306. SAC ¶ 26. On May 11, 2020, the Miami-Dade County State Attorney's Office nolle prossed the two remaining counts and closed the case. SAC ¶ 27.

### C. The February 2021 Arrest

After the state prosecution was dismissed, Narcisse and Pinckney convinced a federal prosecutor to federally indict Howard on firearms violations based on the firearm seized during the January 2020 arrest. SAC ¶ 28. On February 2, 2021, a grand jury returned a True Bill against Howard, charging him with possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1) in the case styled *United States v. Tony Miguel Howard*, No. 20-cr-20147-Scola. SAC ¶¶ 31–34. The indictment allowed the federal prosecutor to procure a warrant for Howard's arrest. SAC ¶ 35.

---

[1] ¶ 19 of the Second Amended Complaint seems to inadvertently leave out the possession of a firearm by a convicted felon charge, which is mentioned in ¶ 26 of the Second Amended Complaint.

Later that day, Deputy United States Marshals, accompanied by Pinckney, arrested Howard. SAC ¶ 36. During the arrest, Pinckney taunted Howard about the January 2020 arrest. SAC ¶ 37.

### D. The Federal Prosecution

Following the February 2021 arrest, Howard was denied bond as a potential risk of flight and was detained at the Federal Detention Center in Miami, Florida. SAC ¶ 38. On July 25, 2021, Howard's defense attorney filed a motion to suppress the physical evidence—namely, the gun that was seized during the January 2020 arrest. SAC ¶ 39. Following an evidentiary hearing, on August 31, 2021, the Honorable United States District Judge Robert Scola granted Howard's motion to suppress, finding that "(1) the detectives did not have probable cause to suspect that the [Howard] had violated or was currently violating the law; and (2) the seizure of [Howard] and search of the bag were unlawful." Order Granting Motion to Suppress, *United States v. Tony Miguel Howard*, No. 20-cr-20147, DE 65 at 10 (S.D. Fla. Aug. 31, 2021) (Scola, J.). As part of its ruling, the Court found that the testimony of detectives Narcisse and Pinckney was not credible. *Id.* at 6. On September 2, 2021, the indictment against Howard was dismissed. SAC ¶ 42; Order of Dismissal, *United States v. Tony Miguel Howard*, No. 20-cr-20147, DE 68 (S.D. Fla. Sept. 2, 2021).

## II. PROCEDURAL HISTORY

On November 10, 2021, pursuant to § 768.28, Florida Statutes, Howard sent notice of his intention to bring claims against the City of Miami, its employees, and/or officers to all governmental entities which may have had an interest in the potential claims. ECF No. 1-2 at 18–20. On January 11, 2024, Howard filed a complaint against the City of Miami, Narcisse,

and Pinckney in the Circuit Court of the Eleventh Judicial Circuit of Florida, Miami-Dade County in the case styled *Tony Howard v. City of Miami et al.*, No. 2024-000561-CA-01. *See* ECF No. 1-2 at 11–17 (the "Original Complaint"). The Original Complaint was based on the January 2020 arrest and contained three counts: Count I—State Law False Arrest/False Imprisonment Against City of Miami; Count II—State Law False Arrest/False Imprisonment Against Narcisse; and Count III—State Law False Arrest/False Imprisonment Against Pinckney (collectively, the "Original Counts"). *Id.*

Howard passed away on June 16, 2025. On October 17, 2025, Sabresha Clark, as the Personal Representative of the Estate of Tony Miguel Howard, was substituted as the Plaintiff. At the same time, the trial court granted Plaintiff's request to amend the complaint.

On October 29, 2025, Plaintiff filed the First Amended Complaint [ECF No. 1-2 at 452–72]. The First Amended Complaint added six new counts for violations of 42 U.S.C. § 1983 to the three Original Counts. The Defendants removed this action to federal court on November 11, 2025. On December 12, 2025, Defendants filed their First Motion to Dismiss [ECF No. 7]. Following a hearing on March 31, 2026, the Court granted Plaintiff's *ore tenus* motion to file an amended complaint. *See* ECF No. 15.

Plaintiff filed the Second Amended Complaint [ECF No. 16] on April 13, 2026. The Second Amended Complaint contains twenty-four counts:[2]

Count I—42 U.S.C. § 1983 False Arrest (January 21, 2020) against City of Miami (Amendment Count)

[2] All of the Counts not contained in the Original Complaint are hereinafter referred to as "Amendment Counts"—Counts I–XII and XVI–XXIV of the Second Amended Complaint. As discussed *infra*, Counts XIII–XV of the Second Amended Complaint are nearly identical to the Original Counts and are labeled as such.

Count II—42 U.S.C. § 1983 Malicious Prosecution (State Case) against City of Miami (Amendment Count)

Count III—42 U.S.C. § 1983 False Arrest (January 21, 2020) against Narcisse (Amendment Count)

Count IV—42 U.S.C. § 1983 Malicious Prosecution (State Case) against Narcisse (Amendment Count)

Count V—42 U.S.C. § 1983 False Arrest (January 21, 2020) against Pinckney (Amendment Count)

Count VI—42 U.S.C. § 1983 Malicious Prosecution (State Case) against Pinckney (Amendment Count)

Count VII—42 U.S.C. § 1983 False Arrest (February 2, 2021) against City of Miami (Amendment Count)

Count VIII—42 U.S.C. § 1983 Malicious Prosecution (Federal Case) against City of Miami (Amendment Count)

Count IX—42 U.S.C. § 1983 False Arrest (February 2, 2021) against Narcisse (Amendment Count)

Count X—42 U.S.C. § 1983 Malicious Prosecution (Federal Case) against Narcisse (Amendment Count)

Count XI—42 U.S.C. § 1983 False Arrest (February 2, 2021) against Pinckney (Amendment Count)

Count XII—42 U.S.C. § 1983 Malicious Prosecution (Federal Case) against Pinckney (Amendment Count)

Count XIII—State Tort False Arrest (January 21, 2020) against City of Miami (Original Count I)

Count XIV—State Tort False Arrest (January 21, 2020) against Narcisse (Original Count II)

Count XV—State Tort False Arrest (January 21, 2020) against Pinckney (Original Count III)

Count XVI—State Tort Malicious Prosecution (State Case) against City of Miami (Amendment Count)

Count XVII—State Tort Malicious Prosecution (State Case) against Narcisse (Amendment Count)

Count XVIII—State Tort Malicious Prosecution (State Case) against Pinckney (Amendment Count)

Count XIX—State Tort False Arrest (February 2, 2021) against City of Miami (Amendment Count)

Count XX—State Tort False Arrest (February 2, 2021) against Narcisse (Amendment Count)

Count XXI—State Tort False Arrest (February 2, 2021) against Pinckney (Amendment Count)

Count XXII—State Tort Malicious Prosecution (Federal Case) against City of Miami (Amendment Count)

Count XXIII—State Tort Malicious Prosecution (Federal Case) against Narcisse (Amendment Count)

Count XXIV—State Tort Malicious Prosecution (Federal Case) against Pinckney (Amendment Count)

Plaintiff filed the instant Motion on May 22, 2026, seeking dismissal of all twenty-four counts.

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for failing to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation modified); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In deciding a motion to dismiss, a court must take the plaintiff's factual allegations as true and construe them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). "But if allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). A pleading that offers only "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Additionally, a complaint may be dismissed if an affirmative defense, such as statute of limitations, appears on the face of the complaint. *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011); *Garcia v. Chiquita Brands Int'l, Inc.*, 48 F.4th 1202, 1220 (11th Cir. 2022).

## **DISCUSSION**

Defendants seek the dismissal of all twenty-four counts of the Second Amended Complaint.[3] Specifically, Defendants seek the dismissal of all federal claims, the dismissal of

---

[3] The Court notes that, although Defendants request the dismissal of all twenty-four counts of the Second

the state tort claims "if they depend on the time-barred federal predicate or immunity," and the remand of any remaining state tort claims back to the Eleventh Judicial Circuit. Mot. at 20.

Defendants make three main arguments for dismissal. First, Defendants argue that all of the Amendment Counts are barred by the statute of limitations. *Id.* at 1–6. Second, Defendant City of Miami argues that the *Monell* claims[4] fail to state a claim. *Id.* at 6–11. Third, Defendant City of Miami argues that the state tort claims against the City[5] are barred by sovereign immunity. *Id.* at 13–17.[6]

Defendants make several additional arguments. They assert that any allegations related to grand jury testimony are barred by absolute immunity, *id.* at 12–13, that the federal claims against Narcisse and Pinckney related to the February 2021 arrest fail because the grand jury indictment established probable cause, *id.* at 17–18, and that any request for punitive damages against the City must be struck, *id.* at 19.[7]

## I. RELATION BACK

Defendants argue that all of the Amendment Counts are barred by the statute of limitations. Mot. at 1–6. Plaintiff concedes that the Amendment Counts are time-barred unless

Amended Complaint, Defendants do not provide any reason that Count XIV—State Tort False Arrest (January 21, 2020) against Narcisse and Count XV——State Tort False Arrest (January 21, 2020) against Pinckney should be dismissed.

[4] "*Monell* Claims" meaning claims against the City pursuant to § 1983 as described in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)—here, Amendment Counts I, II, VII, and VIII.

[5] Counts XIII, XVI, XIX, and XXII

[6] Both parties misnumber the Counts in the SAC at certain points and mislabel certain claims throughout their briefs. For example, Defendants erroneously identify Amendment Count XXII—state tort malicious prosecution (federal case) against the City as a *Monell* claim.

[7] Plaintiff's request punitive damages against the City in Amendment Counts VII and VIII. *See* SAC ¶¶ 107, 133.

they relate back to the Original Complaint. Opp. at 2. Thus, the threshold issue is whether the Amendment Counts relate back to the Original Complaint.

Under Federal Rule of Civil Procedure 15(c), an amendment relates back to the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15. "The critical issue in Rule 15(c) determinations is whether the original complaint gave notice to the defendant of the claim now being asserted." *Moore v. Baker,* 989 F.2d 1129, 1131 (11th Cir. 1993); *Woods Expl. & Producing Co. v. Aluminum Co. of Am.*, 438 F.2d 1286, 1299 (5th Cir. 1971)[8] ("The doctrine of relation back under Rule 15(c) is liberally applied today in the Federal Courts, especially if no disadvantage will accrue to the opposing party. Rule 15(c) is based on the idea that a party who is notified of litigation concerning a given transaction or occurrence is entitled to no more protection from statutes of limitations than one who is informed of the precise legal description of the rights sought to be enforced.").

An amendment that corrects technical deficiencies or expands the facts alleged in the original pleading relates back under the Rule. *Dean v. United States*, 278 F.3d 1218, 1221 (11th Cir. 2002); *Iriele v. Griffin*, 65 F.4th 1280, 1287–88 (11th Cir. 2023). Further, a claim asserting a new legal theory relates back as long as it arises out of the same transaction or occurrence. *Tiller v. Atl. Coast Line R. Co.*, 323 U.S. 574, 581 (1945); *see also Hall v. Spencer Cnty.*, 583 F.3d 930, 934 (6th Cir. 2009) ("[A] court will permit a party to add even a new legal theory in an amended pleading as long as it arises out of the same transaction or occurrence."). Only when

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

a new claim "involve[s] separate and distinct conduct, such that the plaintiff would have to prove completely different facts than required to recover on the claims in the original complaint," does a new claim not relate back. *Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1368 (11th Cir. 2018) (*citing Moore,* 989 F.2d at 1131).

**A. The claims relating to the January 2020 arrest and state prosecution are not barred by the statute of limitations.**

1. <u>The § 1983 and state tort false arrest claims for the January 2020 arrest relate back to the Original Complaint.</u>

Amendment Counts I, III, and V are § 1983 false arrest claims and Amendment Counts XIII–XV are state tort false arrest claims for the January 2020 arrest. The statute of limitations for a § 1983 action is governed by the forum state's residual personal injury statute of limitations—in Florida, that is four years. *Burton v. City of Belle Glade*, 178 F.3d 1175, 1188 (11th Cir. 1999); § 95.11(3)(o), Fla. Stat. In Florida, the statute of limitations for false arrest is also four years. § 95.11(3)(n), Fla. Stat. The statute of limitations begins to run when the plaintiff knew or should have known of his injury; for false arrest claims, this is generally the date of the arrest. *Doe as Next Friend of Doe #6 v. Swearingen,* 51 F.4th 1295, 1302–03 (11th Cir. 2022); *Scullock v. Gee*, 161 So. 3d 421, 422 (Fla. 2d DCA 2014).

Here, both parties agree that the four-year statute of limitations for both the § 1983 and the state tort claims for the January 2020 arrest expired on January 21, 2024. *See* Mot. at 3; Opp. at 2. The Second Amended Complaint was filed on April 13, 2026—after the statute of limitations had expired. Thus, to be timely, the Amendment Counts must relate back to the Original Complaint.

The Original Counts are three state tort claims for false arrets/false imprisonment against each Defendant. The gravamen of the Original Counts is the January 2020 arrest; they

center on Narcisse and Pinckney's illegal search, seizure, and arrest of Howard on January 21, 2020. Therefore, the Original Counts clearly gave Defendants notice that claims related to the January 2020 arrest would be asserted.

As an initial matter, the state tort false arrest counts for the January 2020 arrest are nearly identical to the Original Counts and, on their face, plainly arise from the same occurrence—the January 2020 arrest.

Defendants argue that the § 1983 false arrest claims for the January 2020 arrest do not relate back because, although they relate to the January 2020 arrest, they arise under new legal theories that require different elements. Mot. At 5. Plaintiff responds that these claims are timely because they arise from the same occurrence as the Original Counts—the January 2020 arrest. The Court agrees.

Rule 15(c) permits an amended pleading to add claims exactly like these § 1983 false arrest claims for the January 2020 arrest which expand the facts alleged in the original pleading and assert claims under new legal theory but nevertheless arise out of the same occurrence as the original pleading. *See Dean*, 278 F.3d at 1222 (holding that an amended pleading that expanded the facts was "precisely the sort of amendment contemplated by Rule 15(c)"); *Tiller*, 323 U.S. at 581 (holding that a claim arising under a new legal theory—that the train was improperly lighted under the Federal Boiler Inspection Act—related back to the original claim for failure to provide a lookout under the Federal Employers' Liability Act because both claims arose from the death of Plaintiff's husband in Defendant's train yard). Although the § 1983 false arrest claims for the January 2020 arrest are brought under a different legal theory, these claims still arise from the same occurrence as the Original Counts—the January 2020 arrest.

Thus, Amendment Counts I, III, V and Counts XIII–XV relate back to the Original Complaint and are timely.

2. <u>The § 1983 and state tort malicious prosecution claims for the state prosecution relate back to the Original Complaint.</u>

Amendment Counts II, IV, and VI are § 1983 malicious prosecution claims and Amendment Counts XVI–XVIII are state tort malicious prosecution claims for the state prosecution, which arose from the January 2020 arrest. The statute of limitations for § 1983 actions in Florida is four years. *Burton*, 178 F.3d at 1188; § 95.11(3)(o), Fla. Stat. In Florida, the statute of limitations for malicious prosecution is also four years. § 95.11(3)(n), Fla. Stat. The statute of limitations for malicious prosecution claims begins to run when the proceedings resolve in the plaintiff's favor. *McDonough v. Smith*, 588 U.S. 109, 125, 139 (2019). Here, the four-year statute of limitations for both the § 1983 and state tort malicious prosecution claims relating to the state prosecution expired on May 11, 2024, four years after the Miami-Dade County State Attorney's Office closed the case. The Second Amended Complaint was filed on April 13, 2026—after the statute of limitations had expired. Accordingly, the Amendment Counts must relate back to the Original Complaint to be timely.

Defendants argue that none of the malicious prosecution claims relate back to the Original Complaint because malicious prosecution was not pled in the Original Complaint and requires different elements than false arrest. *See* Mot. At 3. However, these malicious prosecution claims for the state prosecution all arise out of the same occurrence as the Original Counts—namely, Narcisse and Pinckney's illegal search, seizure, and arrest of Howard on January 21, 2020, and the state prosecution that resulted. The fact that the malicious prosecution claims for the state prosecution assert a new legal theory and add new factual

allegations does not sever relation back because the Amendment Counts are based on the same underlying occurrence—the January 2020 arrest and the resulting state prosecution. *See Tiller*, 323 U.S. at 581; *Dean*, 278 F.3d at 1222. Indeed, courts regularly find that malicious prosecution claims relate back to false arrest claims stemming from the same arrest. *See, e.g.*, *Smith v. City of New York*, 1 F. Supp. 3d 114, 119–121 (S.D.N.Y. 2013) (finding that malicious prosecution claim related back to original complaint, which only asserted a false arrest claim); *Coyner v. Camper*, No. 10-CV-02361-PAB-KMT, 2010 WL 5422622, at *3 (D. Colo. Dec. 27, 2010) ("Because [Defendant's] allegedly false accusation underlie both the malicious prosecution and false arrest and imprisonment claims against her, the Court finds that those claims share the same factual nexus."); *see also Lelieve v. Orosa*, No. 10-23677-CIV, 2011 WL 5103949, at *3 (S.D. Fla. Oct. 27, 2011) (Altonaga, J.) (noting that § 1983 claims for false arrest and malicious prosecution related back to the original state court complaint allegations of excessive force during an arrest). This logic applies equally to all of these malicious prosecution claims for the state prosecution, regardless of whether they are brought pursuant to § 1983 or state tort law.

Accordingly, Amendment Counts II, IV, VI, and XVI–XVIII relate back to the Original Complaint and are timely.

**B. The claims arising from the February 2021 arrest and the related federal prosecution are barred by the statute of limitations.**

Amendment Counts VII, IX, and XI are § 1983 false arrest claims and Amendment Counts XIX–XXI are state tort false arrest claims for the February 2021 arrest. The four-year statute of limitations for the false arrest claims for the February 2021 arrest expired on February 2, 2025. *See Scullock*, 161 So. 3d at 422; *Burton*, 178 F.3d at 1188. Amendment Counts

VIII, X, and XII are § 1983 malicious prosecution claims and Amendment Counts XXII–XXIV are state tort malicious prosecution claims related to the February 2021 arrest and subsequent federal prosecution. The four-year statute of limitations for the malicious prosecution claims for the federal prosecution expired on September 2, 2025. *See McDonough*, 588 U.S. at 139. The Second Amended Complaint was filed on April 13, 2026—after the statute of limitations had expired. Accordingly, these Amendment Counts must relate back to the Original Complaint to be timely.

Plaintiff argues that the February 2021 arrest was a "continuance of the conduct on January 21, 2020" and that the new claims for the February 2021 arrest are merely an expansion of the facts that were pled in the Original Counts. Opp. at 4. Thus, Plaintiff argues, the Amendment Counts relating to the February 2021 arrest arise out of the same occurrence as the Original Counts. *Id.* at 3–7. Defendants respond that the February 2021 arrest is a separate and distinct occurrence from the January 2020 arrest and, as a result, any claims relating to the February 2021 arrest do not relate back to the Original Complaint. Mot. at 2–6. The Court agrees.

The sole basis for the Original Complaint was the January 2020 arrest and the resulting state prosecution. The Original Complaint contains no allegations or claims about the February 2021 arrest; indeed, it does not mention a second arrest at all. *See generally* Original Compl. Plaintiff's framing of the second arrest as a continuation of the same event fails to create the factual nexus necessary for the February 2021 false arrest claims to relate back to the Original Complaint. The two arrests "occurred at different times and involved separate and distinct conduct." *Moore*, 989 F.2d at 1132. As described above, the February 2021 arrest

occurred over a year after the January 2020 arrest, was carried out not by Defendants but by Deputy United States Marshals, and resulted in a federal, not state, prosecution. As such, to succeed on the February 2021 false arrest claims, Plaintiff "would have to prove completely different facts than to recover on the claims in the [O]riginal [C]omplaint." *Caron*, 910 F.3d at 1368. Thus, the addition of the February 2021 arrest is not merely an expansion of the facts alleged in the Original Complaint—it adds an entirely new occurrence. Consequently, the February 2021 false arrest claims do not relate back to Original Complaint and are time-barred.

For the same reasons, the malicious prosecution claims for the federal prosecution, which arose out of the February 2021 arrest, do not relate back to the Original Complaint. Like the February 2021 arrest, the federal prosecution involves separate and distinct conduct, and Plaintiff would need to prove completely different facts than those set forth in the Original Complaint. The federal prosecution took place over a year after the January 2020 arrest and the state prosecution, involving different individuals and government entities. Thus, the malicious prosecution claims for the federal prosecution are untimely.

Accordingly, Amendment Counts VII–XII and XIX–XXIV are barred by the statute of limitations.[9]

[9] Because all claims related to the February 2021 arrest and federal prosecution are untimely, the Court need not and does not decide any additional arguments for dismissal of the Amendment Counts related to the February 2021 arrest and federal prosecution, including whether the grand jury allegations are barred by absolute immunity, whether Plaintiff adequately alleged acts by Narcisse and Pinckney leading to the February 2021 arrest, or whether the grand jury indictment established probable cause for the February 2021 arrest. Additionally, the Court need not address Defendants' request to strike allegations seeking punitive damages against the City, as all claims containing said demand are untimely.

## II. MONELL CLAIMS

Defendant City of Miami argues that all *Monell* claims[10] against the City must be dismissed because Plaintiff has failed to adequately state a claim under *Monell*. Mot. at 6–10.

Although municipalities are "persons" within the scope of § 1983, subject to liability, a plaintiff cannot rely upon a theory of *respondeat superior* to hold a municipality liable. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978). Instead, a plaintiff must identify a municipal policy that caused the injury. *Id.* at 690–91; *see also Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003). A plaintiff can establish a municipal policy in two ways: "(1) an officially promulgated [municipal] policy or," as Plaintiff asserts here, "(2) an unofficial custom or practice of the [municipality] shown through the repeated acts of a final policymaker for the [municipality]." *Grech*, 335 F.3d at 1329 (citing *Monell*, 436 U.S. at 690–91).

To prove § 1983 liability against a municipality based on an unofficial custom or practice, "a plaintiff must establish a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Whitaker v. Miami-Dade Cnty.*, 126 F. Supp. 3d 1313, 1320 (S.D. Fla. 2015) (citation modified) (citing *Brown v. City of Ft. Lauderdale*, 923 F.2d. 1474, 1481 (11th Cir. 1991)); *see also Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986). To establish an "unofficial custom or practice," a plaintiff must demonstrate a longstanding unconstitutional pattern of mistreatment that is "deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Brown,* 923 F.2d at 1481 (citation modified). "In other words, to state an unofficial custom or practice of deliberate

[10] Amendment Counts I, II, VII and VIII

indifference, Plaintiff must allege (1) a pattern of deliberate indifference (2) that [municipal] policymakers had notice of and (3) implicitly ratified by failing to stop." *Fisher v. Miami-Dade Cnty.*, 114 F. Supp. 3d 1247, 1252 (S.D. Fla. 2015). A pattern of similar constitutional violations is "ordinarily necessary to demonstrate deliberate indifference." *Gonzalez v. City of Mia.*, No. 1:22-CV-21587-KMM, 2023 WL 2030635, at *2 (S.D. Fla. Feb. 15, 2023) (citation modified) (citing *Connick v. Thompson*, 563 U.S. 51, 62 (2011)); *see also Fisher*, 114 F. Supp. 3d at 1252 (noting that a plaintiff may show deliberate indifference by "showing other incidents involving similar facts").

The only timely *Monell* claims are Amendment Counts I and II. Both claims are based on the City's alleged unofficial custom of deliberate indifference to the "known or obvious consequences" of its failure to "properly train, supervise, and discipline officers regarding lawful arrests and probable cause determinations" resulting in Howard's injury. SAC ¶¶ 50–51, 60. Defendant City of Miami argues that Plaintiff fails to state a claim under *Monell* because she has not adequately alleged a pattern of similar constitutional violations necessary to establish deliberate indifference. Mot. at 6–10. The Court agrees.

"As evidence of the City of Miami's pattern and practice regarding false arrests," the Second Amended Complaint contains a list of 29 lawsuits from 2015 to the present, alleging false arrest against the City under § 1983. SAC ¶ 45. Plaintiff further alleges in a conclusory, non-specific fashion that "there are dozens (if not hundreds) of other similar claims for false arrest and malicious prosecution that were simply not filed as '§1983 lawsuits.'" SAC ¶ 46. These allegations are insufficient.

First, Plaintiff does not make a showing that any of the 29 lawsuits are substantially

similar to the case at hand. Although the prior instances identified by a § 1983 plaintiff need not be identical, they need to be "substantially similar to those at hand in order to be relevant to a deliberate-indifference claim." *Shehada v. Tavss,* 965 F.Supp.2d 1358, 1374 (S.D.Fla. 2013). Plaintiff makes no attempt to show that any of the 29 listed lawsuits are substantially similar to Plaintiff's case beyond her conclusory assertion that "[t]hese complaints are all factually similar to the present case and would undoubtedly put the city of Miami on notice of an unofficial custom or policy of false arrest" and her conclusory allegation of dozens or hundreds of other unspecified, similar complaints. Opp. at 7; SAC ¶¶ 45–46. These allegations need not be accepted as true and are insufficient to establish that the prior incidents were substantially similar to the instant case for the purpose of showing a widespread practice.

Second, even if the prior incidents were substantially similar, there is no indication that any of the 29 listed lawsuits, or the "other similar complaints," had any validity. Plaintiff tries to get around this deficiency by arguing that the number of alleged incidents, regardless of the outcomes, is sufficient to put the City on notice of an unconstitutional policy or custom. Opp. at 7–8. Plaintiff fails to persuade. Whether prior incidents put the City on notice of a pattern or practice of constitutional violations cannot fairly be established solely by the bare number of prior incidents because unfounded or "settled or voluntarily dismissed [lawsuits] do not, without admissions of liability, put the [municipality] on notice of any pattern of constitutional violations." *Buckler v. Israel*, 680 Fed. Appx. 831, 836 (11th Cir. 2017); *see also Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987) ("Indeed, the number of complaints bears no relation to their validity."). Plaintiff's conclusory allegations and bare bones list of complaints give no indication of the validity of any of the prior incidents and are therefore insufficient to put the

City on notice of a pattern or practice of constitutional violations.[11]

Moreover, even if Plaintiff had credibly alleged that all of the 29 prior lawsuits involved substantially similar facts and had been resolved against the City, which she has not and could not,[12] her *Monell* claims would fail. The mere number of prior false arrests, standing alone indicates little as to whether they show "a persistent and widespread practice." *Depew*, 787 F.2d at 1499; *see also Whitaker*, 126 F. Supp. 3d at 1322 (finding that a plaintiff failed to state a claim under *Monell* because, in part, four prior incidents during a single year was not statistically significant in a populous city like Miami); *Pineda v. City of Hous.*, 291 F.3d 325, 329 (5th Cir. 2002) (noting that eleven prior incidents of potential Fourth Amendment violations "cannot support a pattern of illegality in one of the Nation's largest cities and police forces"). Here, it is noteworthy that Plaintiff does not contend, and with good reason, that those 29 prior lawsuits, when put in context of the thousands of arrests made in the City of Miami during that same ten year period,[13] constitute a percentage of all such arrests which rises to the level of a practice or custom, much less one that the City of Miami is indifferent to.[14] To the contrary, like the Court's finding in *Whittaker*, this Court finds that allegations of an average of three false arrests per year, representing such a small percentage of the City's total arrests

---

[11] Tellingly here, a number of the listed cases were decided in the City's favor, including *Buress v. City of Mia.*, No. 20-cv-23078 and *Scott v. City of Mia.*, No. 21-cv-23995, where this Court granted summary judgment in favor of the City and its officers.

[12] *See* footnote 11, *supra*.

[13] *See* Florida Department of Law Enforcement, *UCR Arrest Data*, https://www.fdle.state.fl.us/cjab/ucr/annual-reports/ucr-arrest-data (showing 14,021 and 9,415 total arrests made by the Miami-Dade Police Department for the years 2020 and 2021 respectively). The Court hereby takes judicial notice of the relevant Florida Department of Law Enforcement arrest data. *See* Fed. R. Evid. 201.

[14] The Court notes that the same number of substantially similar, valid complaints might be compelling evidence of a custom or practice in a much smaller community where that same number represents a larger percentage of the total arrests.

per year, are insufficient to show the requisite practice or custom for a *Monell* claim. *See* 126 F. Supp. 3d at 1322.

Because Plaintiff has not alleged a plausible pattern of similar constitutional violations, Plaintiff has not pled an unofficial policy or custom. Accordingly, Plaintiff has failed to state a claim under *Monell*.

## III. SOVEREIGN IMMUNITY

Defendant City of Miami argues that the state tort claims for false arrest and malicious prosecution against the City[15] are barred by sovereign immunity. Mot. at 13–17. Plaintiff only responds that sovereign immunity is waived as to false arrest claims under § 726.28, Florida Statutes. Opp. at 9–10. Plaintiff does not respond regarding the malicious prosecution claims. *See id.*

"The State of Florida and its subsidiaries — including municipalities — are generally immune from tort liability." *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1262 (11th Cir. 2001) (citing Fla. Const., Art. X, § 13). Florida has waived this immunity, however, "for tort claims in the same manner and to the same extent as a private individual." § 768.28(5)(a), Fla. Stat. The waiver includes liability "for the acts or omissions of an officer, employee, or agent" of the State or political subdivision but excludes liability when those acts are "committed in bad faith or with malicious purpose in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *Id.* § 768.28(9)(a); *see also Ghandour v. City of Mia.*, 710 F. Supp. 3d 1188, 1194 (S.D. Fla. 2024) (Altonaga, J.).

Conduct egregious enough to be characterized as "in bad faith or with malicious

[15] Amendment Counts XIII, XVI, XIX, and XXII

purpose," falls outside the ambit of section 768.28's waiver of sovereign immunity. *Casado v. Miami-Dade Cnty.*, 340 F. Supp. 3d 1320, 1330 (S.D. Fla. 2018). To assess whether conduct meets this high bar, courts consider whether the conduct is sufficiently "reprehensible" to fall outside the immunity waiver. *Richardson v. City of Pompano Beach,* 511 So. 2d 1121, 1123 (Fla. 4th DCA 1987). At the motion-to-dismiss stage, courts should only dismiss a complaint on sovereign immunity grounds when the facts, taken as true, "can only be characterized as stating claims for acts done in bad faith or in a willful and wanton manner." *Gregory v. Miami-Dade Cnty.*, 86 F. Supp. 3d 1340, 1343 (S.D. Fla. 2015) (citing *Richardson*, 511 So. 2d at 1123; *Iqbal*, 556 U.S. at 678).

**A. The state tort malicious prosecution claims are barred by sovereign immunity.**

Defendant City of Miami argues that the state tort malicious prosecution claims against the City[16] are barred by sovereign immunity. Mot. 13–15. In her Opposition, Plaintiff does not address Defendants' argument that the state tort malicious prosecution claims against the City are barred by sovereign immunity.[17] *See* Opp. 9–10. Nor could she. Because "malice" is a necessary element of a malicious prosecution claim, "Section 768.28(9)(a) bars an action for malicious prosecution against the state or its subdivisions arising from the malicious acts of their employees." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1330 (11th Cir. 2015); *see also Fla. Dept. of Envtl. Prot. v. Green*, 951 So. 2d 918, 920 (Fla. 4th DCA 2007).

[16] Amendment Count XVI and XXII

[17] An argument that is not addressed in a response is forfeited. *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012); *Megladon, Inc. v. Vill. of Pinecrest*, 661 F. Supp. 3d 1214, 1239 (S.D. Fla. 2023).

Accordingly, Amendment Counts XVI and XXII[18] are barred by sovereign immunity.

**B. Count XIII—state tort false arrest (January 21, 2020) against the City is not barred by sovereign immunity.**

Defendant City of Miami argues that Count XIII—state tort false arrest (January 21, 2020) against the City is barred by sovereign immunity.[19] Under Florida law, sovereign immunity does not bar a false arrest suit against the government. *Jibory v. City of Jacksonville*, 920 So. 2d 666, 667 (Fla. 1st DCA 2005) (noting that sovereign immunity does not bar an action for false arrest and collecting cases); *see also Florez v. Broward Sheriff's Off.*, 270 So. 3d 417, 422 (Fla. 4th DCA 2019) (stating same); *Lester v. City of Tavares,* 603 So. 2d 18, 19 (Fla. 5th DCA 1992) (stating same).

Moreover, the allegations that Defendants claim can only be interpreted as bad faith or malice are not relevant to the January 2020 arrest. Defendant City of Miami argues that the allegations that Narcisse and Pinckney gave false testimony to the grand jury, had a colleague insert false information into an arrest form, and that Pinckney taunted Howard during the February 2021 arrest "can only be characterized as an alleged conspiracy to abuse police power for the purposes of perpetuating an alleged false arrest and alleged wrongful prosecution of Mr. Howard." Mot. at 15–16. Even if this were the case, these events all took place after the January 2020 arrest and as such are only relevant to Plaintiff's malicious prosecution claims and claims related to the February 2021 arrest. Rather, the alleged conduct that led to the

---

[18] As discussed above, Amendment Count XXII is untimely; however, even if this claim were timely, it would be barred by sovereign immunity.

[19] Defendant City of Miami also argues that Amendment Count XIX—state tort false arrest (February 2, 2021) against the City is barred by sovereign immunity. However, the Court need not and does not decide whether Amendment Count XIX is barred by sovereign immunity because the claim is untimely

January 2020 arrest—that Narcisse and Pinckney detained, searched, and arrested Howard in the carport of his grandparents' home without probable cause—does not rise to the level of conduct that "can only be characterized as stating claims for acts done in bad faith or in a willful and wanton manner." *Gregory*, 86 F. Supp. 3d at 1343.

Accordingly, Count XIII is not barred by sovereign immunity.

## CONCLUSION

For the foregoing reasons, Defendants' Motion is **GRANTED in part and DENIED in part.**

Counts I, II, VII–XII, XVI, and XIX–XXIV of the Second Amended Complaint are hereby dismissed without leave to amend. Because this is Plaintiff's third attempt to plead her claims, these claims are dismissed with prejudice.

Defendants' Motion to Dismiss is denied as to Counts III–VI, XIII–XV, XVII, XVIII of the Second Amended Complaint.

**DONE AND ORDERED** in Miami, Florida, October 1, 2026.

HONORABLE PAUL C. HUCK
UNITED STATES DISTRICT JUDGE

cc: All Counsel of Record